Edward A. Walsh, Virginia N. Walsh v. Commissioner.
Walsh v. Commissioner
Docket No. 75181.
United States Tax Court
T.C. Memo 1961-80; 1961 Tax Ct. Memo LEXIS 272; 20 T.C.M. (CCH) 367; T.C.M. (RIA) 61080; March 22, 1961
James D. St. Clair, Esq., for the petitioners. Charles T. Shea, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in the petitioners' income tax for the years 1954, 1955 and 1956 in the amounts of $757.20, $764.91 and $776.03, respectively. The only issue is whether the petitioners are entitled to deduct the amounts of $700, $650 and $650 in 1954, 1955 and 1956, respectively, as ordinary and necessary business expenses within the meaning of section 162 of the Internal Revenue Code of 1954. Findings of Fact Edward A. Walsh and Virginia N. Walsh, husband and wife, are residents of Amherst, New Hampshire. They filed joint income tax returns for the years 1954, 1955 and 1956 with the district director of internal *273 revenue at Portsmouth, New Hampshire. Edward will hereinafter be called the petitioner. During the years 1954, 1955 and 1956 the petitioner was employed as plant production manager by Doehla Greeting Cards, Inc., hereinafter called Doehla, located in Nashua, New Hampshire. He was first employed in this capacity in 1951, and he proceeded to inaugurate personnel changes, mostly on the supervisory level. During the years before us the petitioner, in his capacity as plant production manager, had final responsibility for all production matters in the production of greeting cards, which included supervision of the art department. In the years 1954 through 1956 the Doehla art department employed, on the average, one art director and 12 or 15 artists. There was a permanent supervisory force of about 30 supervisors, who were directly responsible to petitioner, and the Doehla employees ranged from a minimum of 200 to approximately 600 in the peak seasons. During the years 1954 through 1956 the petitioner's compensation from Doehla was based in part on a fixed annual salary and in part on a bonus under a profit-sharing plan maintained by Doehla. In 1954 petitioner's fixed salary was $11,000 *274 a year and his bonus under the profit-sharing plan amounted to approximately 38 percent of the salary; in 1955 the bonus was approximately 22 to 24 percent of the fixed salary; and in 1956 about 16 percent of the fixed salary. Petitioner's adjusted gross income on his returns for 1954, 1955 and 1956, all of which was compensation from Doehla, was $18,902.86, $18,020.76 and $18,710.16, respectively. During each of the years 1954 through 1956 the petitioner twice annually invited all of the production supervisory staff (15 to 20 supervisors) and their wives to his home for a social gathering, which usually involved cocktails in the afternoon, games, catered dinner in the evening, and dancing. During each of these years the petitioner at various times entertained at his home associates and customers of Doehla when these individuals visited the company plant in Nashua, New Hampshire, and petitioner also paid for their lunches in the company cafeteria. During the years 1952 through 1956 Doehla was converting its Nashua plant, which was formerly a storage warehouse, into a manufacturing plant, and petitioner paid for the lunches in the plant cafeteria of the contractors and subcontractors *275 engaged in this work. Petitioner was not reimbursed by Doehla for any of the expenditures. Petitioner claimed the various expenditures for entertainment and lunches as deductions in his income tax returns for 1954 through 1956 as follows: 1954
Lunches for visitors at plant $100
Entertaining customers
600
1955
Lunches for visitors at plant
$ 50
Entertaining customers and plant
supervisors
600
1956
Lunches for visitors at plant
$ 50
Entertaining customers - business
associates, etc.
400
Plant supervision groups for train-
ing and morale purposes
200 Respondent disallowed these deductions in full with the explanation that "it has not been shown (1) that the amounts were ordinary and necessary business expenses, or (2) that the amounts were paid." Petitioner spent a total of $200 a year for the various lunches and entertainment activities as ordinary and necessary expenses of his business as a plant manager. Opinion Petitioner kept no record of his expenditures for lunches and entertainment of customers, supervisors and their wives, and contractors and subcontractors. He estimated that in each of the years his expenses for company parties *276 were $450 and his expenses for entertaining customers $150. He estimated the lunches at the plant for contractors and subcontractors were $100 for 1954 and $50 in each of the years 1955 and 1956. Petitioner had the burden of substantiating the payments and the burden of showing that the expenditures were ordinary and necessary in the conduct of his business as a plant manager. It would seem that some of the claimed expenditures such as the caterer-conducted parties might have been substantiated by evidence other than petitioner's estimate, even though petitioner's canceled checks to the caterer had been destroyed in a storm. However, we feel petitioner did make some expenditures during each of the years in question that might properly be regarded as ordinary and necessary expenses of his business as a plant manager. This case is much like Harold A. Christensen, 17 T.C. 1456. Upon the authority of that case and following the principle of Cohan v. Commissioner, 39 F. 2d 540, we have determined $200 a year is a proper deduction for such expenditures. Decision will be entered under Rule 50.